**E-FILED**
Tuesday, 01 March, 2011  05:00:09 PM
Clerk, U.S. District Court, ILCD

140-1583                              RPV/DDB                              #6191112

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEVIN STANBRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No.: 10 CV 03008 |
| | ) | |
| DR. JACQUELINE MITCHELL, | ) | |
| LARRY PHILLIPS, CAROL VANCE, | ) | |
| DR. MICHAEL BEDNARZ, and any and | ) | |
| all other unnamed and/or unknown persons | ) | |
| discovered through the course of discovery | ) | |
| to have participated in the violations set | ) | |
| forth in this complaint. | ) | |
| | ) | |
| Defendants. | ) | |

## DR. JACQUELINE MITCHELL'S MOTION FOR SUMMARY JUDGMENT

Defendant DR. JACQUELINE MITCHELL, through her attorneys, ROBERT P. VOGT and WELDON-LINNE & VOGT, move pursuant to Federal Rule of Civil Procedure 56(b) and Local Rule 7.1, moves for Summary Judgment, in her favor and against plaintiff Richard Michael Smego.

## I. INTRODUCTION

Plaintiff Kevin Stanbridge is a sexually violent person ("SVP") committed to the Rushville Treatment and Detention Facility ("Rushville"). The plaintiff instituted this 42 U.S.C. Sec. 1983 action alleging that Dr. Mitchell, a dentist, was deliberately indifferent to the plaintiff's dental needs because: (1) her response to his requests for treatment were not timely; (2) the care and treatment she provided was negligent; (3) she extracted three (3) of the plaintiff's teeth; and (4) she did not give him Sensodyne toothpaste.

1

As set forth more fully below, the undisputed material facts shows that each of the plaintiff's claims are without merit and that summary judgment for Dr. Mitchell should be granted.

## II. UNDISPUTED MATERIAL FACTS

1.      In October 2007, the plaintiff was civilly committed as a sexually violent person ("SVP"), Pl's Dep., Pg. 19, L 8-21; Pl's Dep., Pg. 21, lines 8-9, and is presently detained at Rushville. Pl's Dep., Pg. 10, L. 8-9

2.      Dr. Jacqueline Mitchell is a licensed dentist in the State of Illinois, Mitchell Aff., Par.1, and works as an independent contractor for a company called Wexford Health Services as Rushville's dentist. Mitchell Aff., Par. 3.

3.      Rushville houses 427 SVPs. Pl's Dep., Pg. 129, L. 3-5. Mitchell Aff., Par. 3. Dr. Mitchell is the only dentist that Wexford hired to work at Rushville. Pl's Dep., Pg. 19, L. 19-21; Pg. 101, L. 1-2. Mitchell Aff., Par. 3.

### The Overall Care Received by the Plaintiff at Rushville.

4.      The plaintiff admits that Dr. Mitchell examined and treated the plaintiff eight times in 2005, eight times in 2006, three times in 2007, eleven times in 2008, one time in 2009, and more than three times in 2010. Pl's Dep., Pg. 71, L. 9-24; Pgs.72, L. 1-24; Pg. 73, L. 1-14, L. 9-15.

### Obtaining Medical/Dental Care at Rushville

5.      The first step that a Rushville SVP must take to receive medical/dental care at Rushville is to fill out a healthcare request form. Pl's Dep., Pg. 63, L. 7-12; Mitchell Aff., Par. 42. The purpose of the healthcare request form is to alert staff that the SVP feels that he needs dental attention. Pl's Dep., Pg. 63, L. 7-12.

6.      The healthcare request forms submitted by SVPs are triaged by the nursing staff so that SVP's with the most serious conditions are seen by the dental provider first. Mitchell Aff., Par. 4.

7.      The plaintiff submitted fourteen healthcare request forms regarding dental care between 2005 and 2010. Pl's Healthcare Request Forms.

8.      Dr. Mitchell responded to all of the healthcare request forms submitted by the plaintiff requesting dental care. Pl's Dep., Pg. 65, L. 4-24; Pg. 66, L. 1-24; Pg. 67, L. 1-24; Pg. 68, L. 1-3; Pl's Healthcare Request Forms. Mitchell Aff., par. 42.

9.      If an SVP is dissatisfied with his treatment, the grievance system at Rushville is intended to provide a means to come to a peaceful resolution of an SVP's complaint before involving the federal courts. Pl's Dep., Pg. 118, L. 10-15. The grievance system is one of the ways that Rushville's personnel can be put on notice of an SVP's complaint. Pl's Dep., Pg. 118, L. 16-19.

10.     The plaintiff admits that he never filed a grievance against Dr. Mitchell during 2005, 2006, 2007, 2008, 2009, or 2010. Pl's Dep., Pg. 119, L. 17-24; Pg. 120, L. 1-8.

### Dr. Mitchell's Treatment of the Plaintiff at Rushville

11. On May 16, 2005, Dr. Mitchell examined the plaintiff for the first time at Joliet taking diagnostic full mouth x-rays. Dr. Mitchell planned to place a filling on tooth #29 during the plaintiff's next visit. Mitchell Aff., par 6; Pl's Dental Records.

12. On June 22, 2005, the plaintiff was called down to the dental clinic to have a filling placed in tooth #29. However, the plaintiff asked to be rescheduled because he had a migraine headache. Mitchell Aff., par 7; Pl's Dental Records.

13. On August 2, 2005, the plaintiff submitted a healthcare request form asking for dental treatment. Pl's Dep., Pg. 65, L. 4-12. Pl's Healthcare Request Forms. Dr. Mitchell examined the plaintiff on August 2, 2005 and placed fillings in teeth numbers 3, 4, and 29. Pl's Dep., Pg. 65, L. 4-12. Dr. Mitchell also placed one suture in the plaintiff's cheek to repair a laceration. Mitchell Aff., par 8; Pl's Dental Records.

14. On August 4, 2005, the plaintiff submitted a healthcare request form asking for dental treatment. Pl's Dep., Pg. 65, L. 13-15. On August 8, 2005, Dr. Mitchell examined the plaintiff and checked where Dr. Mitchell had placed a suture. Pl's Dep., Pg. 65, L. 17-19. The plaintiff's cheek was healing within normal limits. Dr. Mitchell also performed scaling and root planing – i.e. deep cleaning - of the plaintiff's teeth. Mitchell Aff., par 9; Pl's Dental Records.

15. On October 14, 2005, Dr. Mitchell evaluated all of the plaintiff's dental care needs by performing a complete exam. Mitchell Aff., par 10; Pl's Dental Records.

16. On November 27, 2005, Dr. Mitchell placed a filling in tooth #29 and also scaled tooth #29. Dr. Mitchell examined an area of irritation from an allergic reaction on the plaintiff's lower lip. Dr. Mitchell advised the plaintiff to monitor changes in his diet to determine the source of the allergic reaction. Mitchell Aff., par 12; Pl's Dental Records.

17. On December 6, 2005, Dr. Mitchell examined certain lesions that Dr. Mitchell noticed previously during the plaintiff's November 27, 2005 exam. The exam revealed that the area was healing within normal limits. Mitchell Aff., par 13; Pl's Dental Records.

18. On February 27, 2006, Dr. Mitchell placed fillings in teeth #'s 13 and 15. Mitchell Aff., par 14; Pl's Dental Records.

19. On May 7, 2006, plaintiff submitted a healthcare request form. Pl's Dep., Pg. 65, L. 20-23. On May 8, 2006, Dr. Mitchell examined the plaintiff. Mr. Stanbridge also requested

Sensodyne tooth paste but none was available. Pl's Dep., Pg. 65, L. 20-23; Mitchell Aff., par 15; Pl's Dental Records.

20. On August 11, 2006, the plaintiff submitted a healthcare request form. Pl's Dep., Pg. 65, line 24; Pg. 66, lines 1-3. On August 16, 2006, Dr. Mitchell examined the plaintiff and placed a filling in tooth #29. Pl's Dep., Pg. 65, L. 24; Pg. 66, L. 1-3. Dr. Mitchell also took a periapical x-ray of tooth #29. Mitchell Aff., par 16; Pl's Dental Records.

21. On August 13, 2006, the plaintiff requested Sensodyne tooth paste and Dr. Mitchell provided him with a sample she had available in the dental clinic. Mitchell Aff., par 16; Pl's Dental Records.

22. In response to his November 27, 2006 request form, Dr. Mitchell began root canal therapy on tooth #29 on December 3, 2006. Pl's Dep., Pg. 66, L. 4-7. A root canal cannot be completed within one visit so Dr. Mitchell planned to complete the root canal at the next visit. Dr. Mitchell also prescribed Motrin 600 mg and Amoxicillin, an antibiotic. Mitchell Aff., par 18; Pl's Dental Records.

23. On December 10, 2006, Dr. Mitchell was unable to complete the root canal therapy on tooth #29 because the equipment in the dental unit was not working. Mitchell Aff., par 19; Pl's Dental Records.

24. On December 27, 2006, Dr. Mitchell completed the root canal therapy on tooth #29. Dr. Mitchell also examined the plaintiff's mouth and took bitewing diagnostic x-rays. Mitchell Aff., par 20; Pl's Dental Records.

25. In response to his April 6, 2007 request, Dr. Mitchell found that the plaintiff lost the filling in tooth #29. Dr. Mitchell replaced and cemented the fillings. Pl's Dep., Pg. 66, L. 8-10; Mitchell Aff., par 21; Pl's Dental Records.

26. On June 24, 2007, Dr. Mitchell placed a filling in teeth #6 and #7. Mitchell Aff., par 22; Pl's Dental Records.

27. In response to his September 19, 2007 request, Dr. Mitchell placed fillings in teeth #'s 29, 30 and 31. Pl's Dep., Pg. 66, L. 11-14; Mitchell Aff., par 23; Pl's Dental Records.

28. In response to his October 12, 2007 request, Dr. Mitchell examined the plaintiff on October 27, 2007. Mitchell Aff., par 24; Pl's Dep, Pg. 66, L. 15-22; Pl's Dental Records

29. On January 16, 2008, Dr. Mitchell examined and cleaned the plaintiff's teeth. Pl's Dental Records.

30. On January 20, 2008, Dr. Mitchell extracted tooth #14 and prescribed Amoxicillin, an antibiotic. The plaintiff completed an authorization for treatment form consenting to the extraction. Mitchell Aff., par 26; Pl's Dental Records.

31. On January 25, 2008, the plaintiff submitted a healthcare request form indicating that he had pain following the extraction. Mitchell Aff., par 27; Pl's Dep, Pg. 67, L. 3-14; Pl's Healthcare Request Forms.

32. On January 26, 2008, the next day, Dr. Mitchell examined the plaintiff and diagnosed him with a dry socket, a complication that had occurred following an extraction where a clot failed to form at the extraction site. Mitchell Aff., par 28; Pl's Dep, Pg. 67, L. 3-14; Pl's Dental Records.

33. On February 2, 2008 Dr. Mitchell's examination revealed that the extraction had granulation tissue present which is a sign of healing. The plaintiff reported minimal discomfort. Mitchell Aff., par 29; Pl's Dental Records.

34. On April 6, 2008, the plaintiff submitted a healthcare request form complaining that one of his older fillings had fallen out. Dr. Mitchell examined the plaintiff's teeth on April

6

13, 2008 repairing his broken filling, removing the decay and placing a medicated filling. Dr. Mitchell also examined tooth #2 and removed decay on that tooth and placed a filling. <u>Mitchell Aff.</u>, par 30; <u>Pl's Dental Records</u>.

35. On May 24, 2008 Dr. Mitchell saw the plaintiff in response to his May 19, 2008 healthcare request form. The plaintiff complained that he had another old filling falling apart in a different tooth. Dr. Mitchell examined the plaintiff and x-rayed the tooth. Dr. Mitchell determined that the plaintiff needed a filling in tooth #15 but the compressor was not working so Dr. Mitchell was unable to complete the filling. <u>Mitchell Aff.</u>, par 31; <u>Pl's Dental Records</u>.

36. On November 16, 2008, the plaintiff submitted a healthcare request form requesting an appointment. <u>Mitchell Aff.</u>, par 32; <u>Pl's Healthcare Request Forms.</u>

37. On November 18, 2008, the plaintiff submitted another healthcare request form indicating that a piece of tooth had broken off. On December 13, 2008, Dr. Mitchell examined the tooth that broke and advised that it should be extracted. The tooth structure was missing and the tooth could not be saved. The plaintiff agreed to extraction and signed a consent form. Dr. Mitchell extracted the tooth without any complications and prescribed Motrin 800 mg and Amoxicillin. <u>Mitchell Aff.</u>, par 33; <u>Pl's Dep</u>, <u>Pl's Dental Records</u>.

38. On December 14, 2008, Dr. Mitchell examined the plaintiff and found the extraction site was healing normally. <u>Mitchell Aff.</u>, par 34; <u>Pl's Dental Records</u>.

39. On December 21, 2008, Dr. Mitchell examined the plaintiff and removed the sutures placed after the extraction. The extraction site was healing well. <u>Mitchell Aff.</u>, par 35; <u>Pl's Dental Records</u>.

40. On January 6, 2009, the plaintiff submitted a healthcare request form. In response, Dr. Mitchell examined the plaintiff on February 14, 2009 and placed fillings in teeth #3 and tooth #4. Mitchell Aff., par 36; Pl's Dental Records.

41. On February 28, 2010, Dr. Mitchell examined the plaintiff and took bitewing x-rays. Mitchell Aff., par 37; Pl's Dental Records.

42. On March 28, 2010, Dr. Mitchell saw the plaintiff and placed a filling in tooth #15. There was minimal tooth structure remaining and most of the tooth was made up of composite filling material. Dr. Mitchell discussed this issue with the plaintiff and advised him that the tooth may need to be extracted. Mitchell Aff., par 38; Pl's Dental Records.

43. The August 2008 Department of Human Services Treatment and Detention Facility Resident Handbook does not contain any prohibition against grieving medical or dental issues. August 2008 DHS Treatment and Detention Facility Resident Handbook, Pgs. 44-45.

44. The Resident Handbook states that if a resident has a grievance with medical issues, he should file a grievance. August 2008 DHS Treatment and Detention Facility Resident Handbook, Pgs. 44-45. The Plaintiff never filed a grievance against Dr. Mitchell. Pl's Dep., Pg. 119, L. 17-24; Pg. 120, L. 1-8.

### III. ARGUMENT

#### A.
#### The Standards Applicable to the Plaintiff's Sect. 1983 Claim

Dr. Mitchell does not dispute that, as a general proposition, dental care can constitute a serious medical need under Sect. 1983. See, Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001). However, to satisfy the subjective element of a Sect. 1983 deliberate indifference claim, a plaintiff must present evidence that a defendant acted, or failed to act, with a "sufficiently culpable state of mind." Id. at 1369. A defendant is deliberately indifferent to a prisoner's

medical need only if he "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994). The defendant "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* At a minimum, a plaintiff must show that the defendant knew of an imminent danger and "refused -- consciously refused, knowingly refused -- to do anything about it." Campbell v. Greer, 831 F.2d 700, 702 (7th Cir. 1987). Conduct amounting to medical negligence does not rise to the level of deliberate indifference and an inmate's dissatisfaction with a doctor's chosen course of treatment--even when that course was negligent--is insufficient to establish deliberate indifference. *See,* Estelle v. Gamble, 429 U.S. 97, 107, 97 S. Ct. 285, (1976); Zackery v. Mesrobian, 299 Fed. Appx. 598 (7th Cir. 2008); Jonson v. Doughty, 433 F.3d 1001, 1012-13 (7th Cir. 2006).

In this case, there is no evidence satisfying these requirements and Dr. Mitchell is entitled to summary judgment.

**B.**
**The Plaintiff's Dissatisfaction with Dr. Mitchell's Allegedly Negligent**
**Dental Treatment is Insufficient To Create a Question of Fact for His a Sect. 1983 Claim**

The plaintiff's testimony makes clear that he is dissatisfied with the dental treatment that Dr. Mitchell has provided because, in the plaintiff's opinion, Dr. Mitchell's care and treatment was negligent and careless. Pl's Dep., pg. 111, L. 15-23; Pg. 114, L. 23-24; Pg. 115, L. 1-4. The plaintiff is not asserting that Dr. Mitchell refused to treat him or that she ignored his needs. Instead, the plaintiff's disagreement is with the quality of the dental work that Dr. Mitchell actually provided. Pl's Dep., pg. 119, L. 9-12. As summarized by the plaintiff's own testimony:

> Q:  As far as her dental care was concerned, you disagree with the quality of her dental care, and you think the quality of the dental care she was provided was substandard?

9

A:    Yes.

Pl.'s Dep. Pg. 130, L. 7-11.

Even if this is so, the plaintiff's disagreement with Dr. Mitchell's dental care is not sufficient to create a question of fact in a deliberate indifference case. Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008); Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996). In addition, even if the plaintiff's allegation that Dr. Mitchell provided substandard care was accepted as true, negligence is not sufficient to establish deliberate indifference and the plaintiff's alleged dissatisfaction with Dr. Mitchell's dental care does not carry the day in a Sect. 1983 claim. Zackery, 299 Fed. Appx. at 601; Johnson, 433 F.3d at 1012-1013. District courts have specifically recognized that even if an inmate's "treatment may have been substandard, unreasonable, negligent, or even an act of medical malpractice," that is not enough to sustain a deliberate indifference claim. Walleske v. Grandstaff, 2005 U.S. Dist. LEXIS 34506, pg. 9 (N.D. Ind. 2005); Junk v. Wingo, 2005 U.S. Dist. LEXIS 36723, pg. 9, (N.D. Ind. 2005).

The plaintiff also complains about not being provided Sensodyne toothpaste but he concedes that "it's not the dentist's job to provide you with your toothpaste." Pl.'s Dep. Pg. 100, L. 12-14.

In light of the plaintiff's own undisputed testimony, no issue of fact remains regarding the plaintiff's deliberate indifference claim and Dr. Mitchell is entitled to summary judgment.

## C.
### There is No Verifying Dental Evidence to Suggest that the Plaintiff's Dental Condition Worsened Due to any Alleged Delay in Treatment.

In addition to his claim that Dr. Mitchell's treatment was insufficient or negligent, the plaintiff also asserts that Dr. Mitchell's responses to his requests for dental care were "not timely enough." Pl's Dep., Pg. 90, lines 9-17. The plaintiff admits that the date on which he submitted

10

the request and the date that Dr. Mitchell responded to the request are set forth on each of his requests. Pl's Dep., Pg. 90, L. 2-8.   A review of the healthcare request forms submitted by the plaintiff reveal that the plaintiff was placed in line to see Dr. Mitchell, on average, within a week and a half of when he submitted his request.   Pl's Healthcare Request Forms.   This is not untimely.

It is also important to note that the plaintiff admits that he never filed a grievance against Dr. Mitchell. Pl.'s Dep. Pg. 119, L. 17-24; Pg. 120, L. 1-8. This is important not because the plaintiff's case may be dismissed for his failure to comply, but because the plaintiff acknowledges that filing a grievance is a means of notifying the staff at Rushville that he has a problem that needs attention. Pl.'s Dep. Pg. 118, L. 1-24. By using the grievance procedure, lawsuits can be avoided because the staff involved will be put on notice before a lawsuit is filed. Pl.'s Dep. Pg. 118, L. 1-24.

The plaintiff, however, admits that he never filed a grievance against Dr. Mitchell because he did not read the Resident Handbook thoroughly. Pl.'s Dep. Pg. 120, L. 3-4.

Another undisputed fact is that the plaintiff is not the only patient at Rushville and Dr. Mitchell has nothing to do with dental staffing issues. She can only see those SVP's that are placed on to her list by the nursing staff and that list, in turn, is prepared so that Dr. Mitchell sees the most serious conditions first. Mitchell Aff., Par. 4-5. These facts are important because the plaintiff is complaining about the timeliness of his treatment even though it is undisputed that Dr. Mitchell has no input into how many dentists Wexford hires. To be sure, the plaintiff admits that in his opinion, Dr. Mitchell is a good dentist: "I mean, she is a good dentist. She does good work when she can or when she says she can." Pl.'s Dep. Pg. 94, L. 5-8.

Furthermore, even if this Court did consider the plaintiff's delay claim, a delay in providing medical care to a detainee does not by itself violate the constitution. Anderson-El v. O'Keefe, 897 F. Supp. 1093, 1097 (N.D.IL 1995); Echols v. Skipper, 2001 U.S. Dist. LEXIS 12411 (N.D. Ill. 2001). The detainee must demonstrate that he suffered "substantial harm" as a result of the alleged delay to establish a constitutional violation. Anderson-El, 897 F. Supp. at 1097; Echols, 2001 U.S. Dist. LEXIS at 3. To establish a constitutional violation based on a delay in receiving medical care, the detainee must submit verifying medical evidence showing the detrimental effect of the alleged delay. Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996); Martin v. Taylor, 845 F.2d 1451, 1458 (7th Cir. 1988).

Here, there is no verifying dental evidence suggesting that the condition of the plaintiff's teeth somehow worsened during any of the delays that he alleges. There is simply no evidence whatsoever, much less verifying dental evidence, that the plaintiff's dental condition worsened due to whatever delay he claims to have suffered.

In light of this lack of evidence, summary judgment should be granted to Dr. Mitchell.

**E.**
**The Totality of the Plaintiff's Dental Care at Rushville**
**Shows that No Deliberate Indifference was Present**

When performing a deliberate indifference analysis, the Seventh Circuit has repeatedly held that courts must examine the totality of an inmate's medical care. Walker v. Peters, 233 F.3d 494 (7th Cir. 2000); Dunigan v. Winnebago County, 165 F.3d 587, 591 (7th Cir. 1999); Reed v. McBride, 178 F.3d 849, 855 (7th Cir. 1999). The Seventh Circuit's rulings in Gutierrez, Walker, and Dunigan demonstrate that isolated incidents or even occasional failures are not sufficient to establish a deliberate indifference claim where the totality of the inmate's medical care shows that his needs were not ignored.

In this case, it is undisputed that the plaintiff saw Dr. Mitchell on multiple occasions during the plaintiff's stay at Rushville. *See*, Plaintiff's Dental Records. Indeed, Dr. Mitchell saw the plaintiff in 2005, 2006, 2007, 2008, 2009 and 2010. Dr. Mitchell saw the plaintiff on 34 separate occasions over a six year period. Pl's Dep., Pg. 74, L. 4-7. By contrast, from 1990 to 2000, as a private citizen, the plaintiff saw a dentist on only six occasions. Pl's Dep., Pg. 51, L. 24; pg. 52, L. 1-5. The totality of the dental care provided to the plaintiff by Dr. Mitchell demonstrates that deliberate indifference is absent. No reasonable person could ever say that the plaintiff is being treated with deliberate indifference at Rushville when he is being seen by a dentist more than five times per year.

Summary judgment should be entered in Dr. Mitchell's favor.

### The Plaintiff's Three Teeth Were Properly Extracted

The plaintiff also complains that three (3) of his teeth were extracted. According to the plaintiff, proper dental care would have saved the three extracted teeth. There are several defects with this assertion.

First, allegations that a dentist improperly extracted an inmate's teeth do not rise to the level of a constitutional violation. Woods v. Morris, 2007 U.S. Dist. LEXIS 68846 (C.D. 2007); Blackburn v. State of S.C., 2009 U.S. Dist. LEXIS 18398 (S.C. 2009). ("This Court has previously heard and decided a case and determined that, as a matter of law, no issue of material fact is established by allegations that a dentist pulled an inmate's teeth"). For this reason alone, summary judgment should be granted regarding the plaintiff's teeth extraction complaint.

Second, there is no dispute that the plaintiff consented to each and every extraction performed by Dr. Mitchell. *See,* Exhibits 4, 5 and 6. The plaintiff cannot consent to treatment

on one day and then assert on another that Dr. Mitchell did something wrong when she provided the treatment to which the plaintiff consented.

Third, the evidence is clear that Dr. Mitchell attempted to treat each of the plaintiff's three teeth prior to extraction.  In fact, Dr. Mitchell performed a root canal on one tooth (#29) and placed fillings in the other two teeth prior to extraction.  These treatment efforts do not reflect deliberate indifference.

Finally, there is no admissible evidence supporting the plaintiff's allegation that something Dr. Mitchell did or failed to do lead to the extraction of teeth #s 2, 14 and 29.  The fact of the matter is that the plaintiff's teeth needed to be extracted because of severe decay and even the plaintiff does not assert that Dr. Mitchell was somehow responsible for the plaintiff's severe decay.

Summary judgment should be granted to Dr. Mitchell.

## Conclusion

Accordingly, for all of the reasons set forth above, Dr. Mitchell respectfully requests and prays that this Court grant her motion for summary judgment.

Respectfully Submitted,

**WELDON-LINNE & VOGT**

By: /s/ Robert P. Vogt
　　　Robert P. Vogt

**WELDON-LINNE & VOGT**
Attorneys for Defendant
105 West Madison Street, 14th Floor
Chicago, Illinois 60602
(312) 236-5151
Pldgs/ Dr. Mitchell's MSJ

14

140-1583                          RPV/DDB                    #6191112

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

KEVIN STANBRIDGE,            )
                                        )

            Plaintiff,          )
                                          )

            v.              )     Court No.: 10 CV 03008
                                          )

DR. JACQUELINE MITCHELL,    )
LARRY PHILLIPS, CAROL VANCE,  )
DR. MICHAEL BEDNARZ, and any and )
all other unnamed and/or unknown persons )
discovered through the course of discovery )
to have participated in the violations set  )
forth in this complaint.             )
                                          )

           Defendants.        )
                                          )

## CERTIFICATE OF SERVICE

I, Robert P. Vogt, certify that on **March 1, 2011,** I electronically filed **Defendant Dr. Mitchell's Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

Brian Patrick Gainer    gainerb@jbltd.com

Daniel Nathan    nathand@jbltd.com, delcornok@jbltd.com

Jack T Riley , Jr    rileyj@jbltd.com, alaridl@jbltd.com

Lisa  A  Behle    lbehle@atg.state.il.us,  bmyers@atg.state.il.us,  jedwards@atg.state.il.us, jwight@atg.state.il.us

and hereby certify that on **March 1, 2011** I mailed by United States Postal Service, the document(s) to the following non-registered participant(s):

Kevin W. Stanbridge #864051
RUSHVILLE
IL Department of Human Services
Treatment & Detention Facility
1680 East County Farm Road
Rushville, IL 62681

15

Respectfully Submitted,

**WELDON-LINNE & VOGT**

By: /s/ Robert P. Vogt
     Robert P. Vogt


**WELDON-LINNE & VOGT**
Attorneys for Defendant
105 West Madison Street, 14th Floor
Chicago, Illinois 60602
(312) 236-5151

16