UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KEVIN W. STANBRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10-CV-3008 |
| | ) | |
| DR. JACQUELINE MITCHELL, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding *pro se*, is detained in the Rushville Treatment and

Detention Center pursuant to the Illinois Sexually Violent Persons Act.  He alleges

deliberate indifference to his serious dental needs.         Judge Harold A. Baker

has already granted the motions for summary judgment by Defendants Vance,

Phillips, and Bednarz, leaving only Dr. Mitchell as a defendant.  Now before this

Court is Dr. Mitchell's motion for summary judgment, which will be denied for the

reasons below.[1]

**SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is

_____

[1]The case was transferred to this Court in September, 2011.

1

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011).  "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant.  Id.

## UNDISPUTED FACTS

Plaintiff is detained as a "resident" in the Rushville Treatment and Detention

2

Center ("Rushville") pursuant to the Illinois Sexually Violent Persons Act. Rushville retains one dentist to serve its over 400 residents—Defendant Dr. Mitchell.  Dr. Mitchell is an employee of Wexford Health Services, providing dental services to Rushville residents pursuant to a contract.  She works at Rushville 15 hours per week.

Dr. Mitchell first examined Plaintiff's teeth in May, 2005, when Plaintiff was detained in the Joliet Treatment and Detention Center.  She took x-rays and planned to put a filling in tooth number 29 at the next visit.  Plaintiff was scheduled for the filling in June, 2005, but Plaintiff asked to reschedule because he was suffering from a migraine headache that day.  Plaintiff filed a request for dental care on August 2, 2005, reporting the loss of two fillings, which exposed sharp edges and made eating difficult.  That same day, Dr. Mitchell filled teeth numbers 3, 4, and 29 and placed a suture for a cut that apparently occurred during the procedure.  Plaintiff asserts that the fillings were temporary.  Since Dr. Mitchell does not specify the type of filling and this is summary judgment, this Court will assume the fillings were temporary.  Two days later Plaintiff submitted a dental request stating that the stitches had come out but that the cut was healing well and he had no complaints.  (Complaint, d/e 1, p. 16).

Dr. Mitchell next saw Plaintiff on August 8, 2005 for "scaling and root

planing" and she determined that Plaintiff's cut was healing normally.  Her records

indicate that she planned to fill teeth 3 and 4 at the end of September and tooth 29

on October 4, 2005 (presumably with permanent fillings).  On October 14, 2005,

Dr. Mitchell filled teeth numbers 3 and 4.  In November, 2005, Dr. Mitchell

"scaled," or deep-cleaned, tooth 29 and placed a permanent filling in tooth 29.

The next month, Dr. Mitchell saw Plaintiff to examine some lesions she had

noticed.  She determined that the lesions were healing properly.

In February, 2006, Dr. Mitchell filled teeth 13 and 15.  In May, 2006, Dr.

Mitchell examined Plaintiff in response to his request for Sensodyne toothpaste,

but Dr. Mitchell had no samples of Sensodyne in her clinic on that date.

Plaintiff was moved from the Joliet facility to the Rushville facility along

with the other residents during the Summer of 2006.  On August 11, 2006, Plaintiff

submitted a request for dental care regarding a loose filling, apparently in tooth 29.

Dr. Mitchell examined Plaintiff two days later and gave Plaintiff a sample of

Sensodyne toothpaste.  On August 16, 2006, she took an x-ray of tooth number 29

and began placing a filling in that tooth, but she was unable to finish because the

power was out.[2]  On November 27, 2006, Plaintiff submitted a dental care request

---

[2]Dr. Mitchell avers that she placed a permanent filling in tooth 29 on August 16, 2006, and her records seem to support that assertion.  However, Plaintiff maintains that no filling was placed due to the lack of power.  Plaintiff's evidence in support is a 8/16/06 response to Plaintiff's dental request, which states "Resident seen for lost filling tooth #29 . . . Temp unable

4

about tooth 29, stating that the temporary filling had fallen out three weeks prior and that he had awoken with serious, throbbing pain.

Six days later, on December 3, 2006, Dr. Mitchell began a root canal on tooth number 29, but she was unable to complete the procedure in one visit.  Dr. Mitchell was unable to complete the procedure the following week because the dental equipment was not working.  The records appear to show that Plaintiff was supposed to be scheduled for December 16, 2006, to finish the procedure, but the root canal was not completed until December 27, 2006, more than three weeks after the procedure was started.

The dental records from December 27, 2006, indicate that Dr. Mitchell planned to fill tooth number 31 on January 7, 2007.  However, this did not occur.

On April 6, 2007, Plaintiff submitted a request for dental care because tooth 29's temporary filling had again fallen out.  His dental request stated that he had no pain, but that the tooth's edges were sharp.  (Complaint, d/e 1, p. 20).  Dr. Mitchell saw Plaintiff a week later and put another temporary filling in tooth 29.  In June, 2007, Dr. Mitchell filled teeth 6 and 7.

On September 19, 2007, Plaintiff submitted a dental request stating that he

---

to complete filling no power."  (Complaint, d/e 1, p. 18).  This is a material dispute, so the Court credits Plaintiff's version on summary judgment.

might be released in October and asking if Dr. Mitchell would be able to complete all of his dental care before his release, hopefully by October 7, 2007.  (Complaint, d/e 1, p. 21).  Dr. Mitchell saw Plaintiff on October 7, 2007, and filled teeth 29, 30, and 31.  Tooth 31 had been planned for a filling ten months earlier.  The records from the September 19th visit indicate that Dr. Mitchell planned to fill teeth 2-B and 3 on November 7, 2007.

On October 12, 2007, Plaintiff filed a dental request reporting that an old "'Navy'" filling had come out and asking that any dental work be scheduled around his nightly phone call time.  (Complaint, d/e 1, p. 22). On October 27, 2007, Dr. Mitchell saw Plaintiff in response to this request, but there was no anesthetic in the clinic that day, so the tooth was not filled.  Dr. Mitchell noted in her records that day that tooth number 2-B needed to be filled on November 7, 2007.  However, this did not occur.

On January 11, 2008, Plaintiff filed a dental care request stating, "I've lost another chunk of tooth or filling from another tooth.  Minor ache when eating or drinking."  (Complaint, d/e 1, p. 23).  He asked again not to be called for treatment during his weekly phone call time.  On January 13, 2008, Dr. Mitchell examined Plaintiff's teeth and found deep decay in tooth 14.  The necessary equipment was unavailable that day, preventing Dr. Mitchell from working on the tooth.   A few

6

days later, on January 20th, Dr. Mitchell extracted tooth 14 and prescribed an antibiotic.

Five days later Plaintiff filed a dental care request reporting pain and throbbing. Dr. Mitchell saw Plaintiff the next day and determined that Plaintiff had developed dry socket from the extraction of tooth 14, "a complication that . . . occur[s] following an extraction where a clot fail[s] to form at the extraction site," (d/e 42, ¶ 32), for which Dr. Mitchell prescribed Motrin. By February 2, 2008, Plaintiff reported minimal discomfort to Dr. Mitchell, and Dr. Mitchell determined that the extraction site was healing properly. Tooth number 2-B had still not been filled.

On April 6, 2008, Plaintiff submitted a dental request because the filling in tooth number 4 had fallen out. The next week, on April 13th, Dr. Mitchell saw Plaintiff, removed the decay in tooth number 4, and placed a medicated filling there. She also removed decay from and put a filling in tooth number 2-B. The records show that Dr. Mitchell intended to fill tooth number 2-F the next week, but that was never done for reasons not in the record.

On May 19, 2008, Plaintiff submitted a dental request reporting that another old filling had fallen out. The next week Dr. Mitchell examined Plaintiff and determined that tooth number 15 needed a filling, but she could not fill the tooth

because the compressor was not working.[3]  Dr. Mitchell told Plaintiff that he would be rescheduled for late June, 2008, when the equipment was working.  It does not appear that Plaintiff was ever rescheduled.

On November 16, 2008, Plaintiff submitted a dental request expressing concern about unfinished dental work.  He stated, "Still have lots of repairs to make and some to finish.  Its been several months and I'm concerned that if we wait too much longer, it will be too late . . . I would like to keep all of my remaining teeth."  (Complaint, d/e 1, p. 26). On November 18, 2008, Plaintiff submitted another request because a part of tooth number 2 had broken off.  He wrote, "A piece of tooth broke off today.  I now have 3 teeth that need desperate attention.  Preferably permanent fillings, etc."  (Complaint, d/e 1, p. 27).

Dr. Mitchell saw Plaintiff on December 13, 2008, in response to his November requests.  She determined that tooth 2 could not be saved because minimal tooth structure remained.  She extracted tooth number 2 that day and prescribed Motrin and an antibiotic.  Follow up exams showed that the extraction site was healing normally.

On January 6, 2009, Plaintiff submitted a dental request stating that he was

---

[3]Plaintiff argues that Dr. Mitchell offers no proof to back up her assertion that, at times, she lacked working equipment, power, and proper supplies.  However, Dr. Mitchell can testify personally to these facts because she has personal knowledge of them.

experiencing pain from a tooth broken during Dr. Mitchell's extraction of tooth 2.

He wrote in part, "The tooth that you said you broke a piece off of while extracting

another tooth has a hot/cold sensitive spot.  Sure makes eating/drinking difficult.

Besides the unwanted pain, it's probably helping me to lose weight.  But then

again, I'd rather get rid of the pain."  (Complaint, d/e 1, p. 28).  Dr. Mitchell

examined Plaintiff over one month later, on February 14, 2009, and filled teeth

numbers 3 and 4 again.

One year later, in February, 2010, Dr. Mitchell saw Plaintiff for his annual

exam. She took x-rays.  On March 28-29, 2010, Dr. Mitchell put a filling in tooth

number 15 and built it up.  However, she advised Plaintiff that tooth number 15

may need extraction at some point, as minimal tooth structure remained.

On March 29, 2010, Dr. Mitchell worked on tooth number 16 and noted that

the next visit would be in August, 2010, to fill tooth 19.  However, that did not

happen.

On July 11, 2010, Dr. Mitchell extracted tooth 29 because the crown had

broken.

On September 26, 2010, Dr. Mitchell examined Plaintiff and determined that

tooth 31 needed extraction.  Tooth 31 was extracted on October 11, 2010.

On December 19, 2010, tooth 19 was extracted.  Dr. Mitchell contends that

this tooth was extracted at Plaintiff's request, but there is no information on the condition of the tooth at that time.

## ANALYSIS

Plaintiff's claims fall under the Fourteenth Amendment's due process clause, rather than the Eighth Amendment's cruel and unusual punishment clause, because Plaintiff is not serving a conviction.  However, for all practical purposes the legal analysis is the same.  "[T]he plaintiff has the burden of showing that: (1) the harm to the plaintiff was objectively serious; and (2) the official was deliberately indifferent to [that harm]."  Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005).

Dental needs may constitute objectively serious medical needs, and Dr. Mitchell does not dispute that Plaintiff's dental needs were serious.  Board v. Farnham, 394 F.3d 469, 480 (7th Cir. 2005)("At the outset, we reiterate our view that 'dental care is one of the most important medical needs of inmates.'")(quoted cites omitted).  "Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."  Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010). Therefore, the question is whether a rational juror could find, on the evidence in this record, that Dr. Mitchell was deliberately indifferent to Plaintiff's dental needs.

"Deliberate indifference occurs when a defendant realizes that a substantial

risk of serious harm . . . exists, but the defendant disregards that risk." <u>Berry</u>, 604

F.3d at 440. "A significant delay in effective medical treatment . . . may support a

claim of deliberate indifference, especially where the result is prolonged and

unnecessary pain." <u>Id.</u> at 441 (claim that physician refused to refer inmate to

dentist survived summary judgment where refusal "resulted in a substantial and

unnecessary delay in the treatment of his decaying tooth."). However, malpractice

does not rise to the level of deliberate indifference, and there is no malpractice

claim before the Court. <u>Norfleet v. Webster</u>, 439 F.3d 392, 396 (7th Cir. 2006).

A defendant who is aware of a substantial risk but lacks the authority or

ability to do something about that risk is not deliberately indifferent. For example,

if Dr. Mitchell cannot keep up with the dental needs of Rushville's residents

because of understaffing and lack of resources *and* she lacks the authority to do

something about these problems, then she is not deliberately indifferent: she is

simply powerless. On the other hand, if Dr. Mitchell knows that she cannot timely

treat the residents' dental needs and she has the authority to refer residents for

dental care or take other action to see those needs are met, then an inference of

deliberate indifference might arise. There is no information on these issues in the

record.

Dr. Mitchell avers that her "care and treatment of Mr. Stanbridge complied

with the standard of care for a reasonably well-qualified dentist."  (Mitchell Aff. ¶
43, d/e 42-3).  She avers that, "Because of the large number of residents and my
limited time at the facility, the patients are prioritized so that the patients with the
most serious conditions are seen and treated first."  (Mitchell Aff. ¶ 4, d/e 42-3).
Plaintiff does not dispute that, between 2005 and 2010, Dr. Mitchell responded in
some fashion to each of his many requests for dental care, though treatment was
not provided with each response.

Five of Plaintiff's teeth were ultimately extracted over a period from 2008-
2010.  Plaintiff maintains that these teeth could have been saved if Dr. Mitchell had
provided more timely services and had performed those services correctly.  He
argues that the delay in treatment contributed to the deterioration of his teeth and
caused him unnecessary pain.  He describes Dr. Mitchell's treatment as
substandard.  Plaintiff also asserts that Dr. Mitchell had a duty to refer him to an
outside dentist if she was unable to timely treat his dental needs.

Dr. Mitchell argues that Plaintiff's claims must fail because he has not
submitted "verifying medical evidence" that the delays caused him substantial
harm, citing Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996).  The Seventh
Circuit in Langston did state that "'[a]n inmate who complains that delay in
medical treatment rose to a constitutional violation must place *verifying medical*

*evidence* in the record to establish the detrimental effect of delay in medical

treatment to succeed.'"  100 F.3d at 1240-41 (emphasis in <u>Langston</u>)(quoted cite

omitted).  However, expert testimony is not necessarily required to establish a

detrimental effect.  A detrimental effect occurs when the delay "unnecessarily

prolong[s] and exacerbate[s]" pain.  <u>Williams v. Liefer</u>, 491 F.3d 710, 715 (7th

Cir.2007).  "[A] delay in the provision of medical treatment for painful

conditions—even non-life-threatening conditions—can support a

deliberate-indifference claim, . . . , so long as the medical condition is 'sufficiently

serious or painful.'" <u>Grieveson v. Anderson</u>, 538 F.3d 763, 779 (7th Cir.

2008)(quoted and other cites omitted).

In <u>Grieveson v. Anderson</u>, the Seventh Circuit reversed a grant of summary

judgment to the defendants on a prisoner's claim arising from a one and one-half

day delay in obtaining medical care for the prisoner's broken nose.  Even though

the prisoner in <u>Grieveson</u> had no expert, the Seventh Circuit concluded the

prisoner's own testimony that he had informed guards of his pain and need for

treatment was competent, admissible evidence that the delay "caused Grieveson

'that many more hours of needless suffering for no reason.'" 538 F.3d at 780.

Similarly, in <u>Williams v. Liefer</u>, the Seventh Circuit held that medical records

alone could allow a jury to find that a six-hour delay in obtaining medical

13

treatment for a prisoner's chest pain prolonged and exacerbated his pain, and

prolonged his high blood pressure, thus satisfying the "verifying medical evidence"

requirement.  491 F.3d at 715-16.

Of course minimal delays are not actionable, and delays in treating non-

emergency conditions can be expected in any dentist's office, particularly so in

Plaintiff's environment.  Berry, 604 F.3d at 442.  However, many months of delay

can amount to deliberate indifference, depending on the severity of the condition

and the pain.  Id. (two-month refusal to refer prisoner to dentist for serious tooth

pain could amount to deliberate indifference).

Here, Plaintiff does not offer competent, admissible evidence that the delays

in treatment actually caused the need to extract the teeth.  An equally viable

explanation could be that Plaintiff's teeth were already in such poor condition that

Dr. Mitchell's efforts were valiant attempts to stave off the inevitable.

For example, Dr. Mitchell argues in her brief that she did everything she

could to save tooth 29.  On the other hand, Dr. Mitchell does not make this

statement in her affidavit, nor does her affidavit address whether the delays in

treatment of Plaintiff's teeth caused or contributed to the need to extract them.  Her

affidavit is a recitation of the actions she took, without any discussion of the

overall condition of Plaintiff's teeth or the effect that the delays had on their

deterioration.  Even a layperson knows that teeth do not normally break

spontaneously or need sudden extraction absent a serious, preexisting problem.

Still, in the Court's opinion, Plaintiff would need expert testimony to show that the

delay in treatment caused or contributed to the need to extract the teeth.

However, Plaintiff does not need expert testimony to testify to the pain and

difficulty he experienced as a result of the delays and whether those conditions

grew worse as the delays grew longer.  Berry, 604 F.3d at 441.  Dr. Mitchell

motion does not address this possibility.  Though Dr. Mitchell did see Plaintiff in

response to every dental request, long delays are evident.  For example, when the

filling in tooth 29 fell out in August, 2006, Dr. Mitchell could not fill the tooth

because of a lack of power.[4]  The tooth was either never filled or filled with

temporary material, and nothing further was done until December, 2006, when a

root canal was necessary.  The root canal itself took over three weeks because Dr.

Mitchell did not have the time to finish it in one visit.

Similarly, a six-month delay occurred for filling one side of tooth 2 (2-B),

---

[4]Dr. Mitchell does not argue that any of Plaintiff's claims are barred by the statute of
limitations.  The continuing violation doctrine may or may not apply to counter the defense as to
some or all of the claims.  See Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir. 2001)(The
"continuing violation" doctrine permits a plaintiff to sue outside the statute of limitations if "[t]he
injuries about which the plaintiff is complaining . . . are the consequence of a numerous and
continuous series of events.").  However, the Court need not address the issue since Dr. Mitchell
has not moved for summary judgment on statute of limitations grounds.

and the other side of this tooth was never filled. Teeth 19 and 31 both waited nine months or more for fillings. Lastly, tooth number 14 is not mentioned at all in the records until its extraction, leaving one to wonder why tooth 14 suddenly needed extraction.

On the other hand, Plaintiff does not say much about the pain and difficulty he experienced caused by these delays, and many of his dental requests seem to suggest that his pain and difficulty was sporadic.

In sum, the Court is left with too many questions unanswered. Dr. Mitchell bears the burden of answering these questions in order to win summary judgment, and she has not done so. In particular, on this record a rational juror could find that Dr. Mitchell's delays in treating Plaintiff's teeth caused Plaintiff prolonged and unnecessary pain and suffering, even if Plaintiff has no expert testimony to establish that the delays caused the need for the extractions. Accordingly, summary judgment will be denied and the case will be set for trial.

IT IS THEREFORE ORDERED:

1) Defendant Dr. Mitchell's motion for summary judgment is denied (d/e 42).

2) A final pretrial conference is scheduled for Monday, January 23, 2012, at 9:00 a.m., by telephone conference. The parties are directed to submit an agreed,

proposed final pretrial order at least fourteen days before the final pretrial

conference.  Defendant bears the responsibility of preparing the proposed final

pretrial order and mailing the proposed order to Plaintiff to allow Plaintiff

sufficient time to review the order before the final pretrial conference.  *See* CD-IL

Local Rule 16.3.[5]

    2)  The clerk is directed to issue a telephone writ to secure the plaintiff's

appearance at the final pretrial conference.

    3)  The proposed final pretrial order must include the names of all witnesses

to be called at the trial and must indicate whether the witness will appear in person

or by video conference.  Nonparty witnesses who are detained at the Rushville

Treatment and Detention Center will testify by video.  Other nonparty witnesses

may appear by video at the Court's discretion.  The proposed pretrial order must

also include the names and addresses of any witnesses for whom trial subpoenas

are sought.  The parties are responsible for timely obtaining and serving any

necessary subpoenas, as well as providing the necessary witness and mileage fees.

Fed. R. Civ. P. 45.

    4) Jury selection and the jury trial are scheduled for Tuesday, February 7,

---

[5]The Local Rules are listed on this District's website: www.ilcd.uscourts.gov.  A sample pretrial order is attached to those rules.

2012, at 9:00 a.m., by personal appearance of the parties before this Court in Springfield, Illinois.

5) After the final pretrial order is entered, the Clerk is directed to issue the appropriate process to secure the personal appearance of Plaintiff at the trial and the video appearances of the video witnesses at the trial.

ENTERED: November 7, 2011

FOR THE COURT:


**s/Sue E. Myerscough**
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE